IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MICA M. MORGAN, *on behalf of herself and all others similarly situated*, ) ) ) ) Plaintiff, ) v. ) ) LAKEVIEW LOAN SERVICING, LLC, ) ) Defendant. ) ) | Civil Action No. 3:14-cv-444(REP) |

**PLAINTIFF'S MEMORADNUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)**

COMES NOW the Plaintiff, by counsel, and as for her Memorandum in Opposition to the Defendant's Motion to Dismiss the Plaintiff's Second Amended Class Action Complaint, Plaintiff respectfully submits this memorandum of law.

**INTRODUCTION**

In this case, Ms. Morgan alleges a breach of contract class action against Defendant Lakeview Loan Servicing ("Lakeview") on behalf of herself and other Virginia consumers with Federal Housing Administration ("FHA") loans by foreclosing on their homes even though Lakeview did not satisfy the conditions precedent to foreclosure in their respective Deeds of Trust. In particular, Defendant uniformly failed to comply with the requirements of 24 C.F.R. § 203.604(d), which requires the lender to make reasonable effort to arrange a face-to-face meeting with the homeowner, including "at least one trip to see" the homeowner at the property. *See* 24 C.F.R. § 203.604(d). Because of this uniform failure to comply, Defendant did not have the power to foreclose because the conditions precedent to foreclosure were unsatisfied in the Deeds of Trust. Accordingly, Ms. Morgan seeks an order from the Court rescinding the foreclosure sales and the

1

purported trustees' deeds, as well as actual damages for herself and each class member who has incurred such damages.

In response, Defendant moves the Court to dismiss the Amended Complaint for lack of subject matter jurisdiction based on its erroneous assertion that the amount in controversy does not satisfy the $75,000 threshold for diversity jurisdiction. Defendant's argument rests entirely on its erroneous argument that the "value of the object of the litigation" is the face-to-face interview required by § 203.604(d), which Defendant argues is too speculative to support jurisdiction. In doing so, Defendant mistakenly relies on the U.S. District Court for the Western District of Virginia's decision in *Mathews v. PHH Corp.*—a declaratory judgment case where the plaintiffs sought to determine their rights under the respective documents because the case was filed prior to the foreclosure sale. 2010 WL 37666538 (W.D. Va. 2010) (hereafter "*Mathews I*").[1]

Unlike *Mathews I*, the object of this litigation is the Plaintiff's property, which she seeks to have lawfully deeded back to her as a result of Defendant's failure to satisfy the conditions precedent to foreclosure incorporated into her Deed of Trust. Accordingly, the present lawsuit before the Court involves a claim over real property and it is well settled that in cases "involving claims to real property, the amount in controversy is the value of the property, not simply the amount of damages the plaintiff seeks." *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 758 (E.D. Va.

---

[1] After the district court remanded *Mathews* to the Circuit Court for Nelson County, the circuit court granted the defendant's demurrer on the grounds that the plaintiffs materially breached the deed of trust through non-payment; therefore, they could not enforce their contractual right to a face-to-face meeting in their deed of trust. Subsequently, this decision was appealed and resulted in the seminal decision by the Supreme Court of Virginia where it held: (1) that the consumers' failure to pay did not preclude them from enforcing the face-to-face requirements in 24 C.F.R. § 203.604; and (2) that the deed of trust incorporated, as a condition precedent to foreclosure, required the face-to-face meeting prior to the foreclosure. *Mathews v. PHH Mortgage Corporation*, 283 Va. 723 (2012).

2013). And since the value of Ms. Morgan's property unquestionably exceeds $75,000.00, the Defendant's motion should be denied.

## LEGAL STANDARD

In this case, Ms. Morgan seeks to invoke federal jurisdiction on diversity grounds, which applies if: "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1) . Defendant does not dispute that it is a citizen of a different state. Rather, Defendant's motion challenges that amount in controversy requirement.

"The 'legal certainty' test is used to determine whether a complaint meets the amount in controversy requirement." *JTH Tax, Inc. v. Vacchiano*, 2006 WL 3299996, at *2 (E.D. Va. Oct. 25, 2006) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). This means "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.; see also Shanaghan v. Cahill,* 58 F.3d 106, 112 (4th Cir.1995). "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan*, 58 F.3d at 112 Additionally, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver, Comm'n*, 432 U.S. 333, 347 (1977) (emphasis added).

## ARGUMENT

### 1. The Amount in Controversy Easily Exceeds $75,000.00.

Defendant argues that the amount in controversy does not exceed $75,000.00 and as a result the Court lacks subject matter jurisdiction. In support of this argument, Defendant ignores a series

of cases from this Court directly on point and, instead, relies on *Mathews I*, which is obviously distinguishable from this case. 2010 WL 37666538 (W.D. Va. 2010).[2]

Defendant's entire argument regarding the amount in controversy is based on a distorted understanding of *Mathews I*, which Defendant mischaracterizes as standing for the proposition that purported damages "under § 203.604 are too speculative to satisfy the amount in controversy." (Def.'s Mem. at 14). In doing so, Defendant isolates the court's statement that it could not "imagine a speculative sum for the value of the face-to-face meeting that would exceed $75,000." *Id*. (citing *Mathews I*, 2010 WL 3766538 at *2). However, the court made this statement in the context of *Mathews I*—a declaratory judgment case where the plaintiff sought to invoke diversity jurisdiction *prior to the foreclosure*. 2010 WL 3766538 at *1 ("as previously noted, the foreclosure was cancelled."). Thus, unlike the present case, the court only analyzed the value of *having to conduct* a face-to-face meeting with the plaintiffs prior to the foreclosure. *See also Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940, 947 (E.D. Va. 2010) ("This is not a suit to quiet title or ***even for simple breach of contract***, and if granted the requested declaratory relief, neither party has established that the Plaintiff stands to recover any amount of money from the Defendant or that the Defendant would lose *any* of the principal owed or incur any other cost of complying that would exceed $75,000.").

---

[2] After the court remanded *Mathews* to the Circuit Court for Nelson County, the circuit court granted the defendant's demurrer on the grounds that the plaintiffs materially breached the deed of trust through non-payment; therefore, they could not enforce their contractual right to a face-to-face meeting in their deed of trust. Subsequently, this decision was appealed and resulted in the seminal decision by the Supreme Court of Virginia where it held that: (1) that the consumers' failure to pay did not preclude them from enforcing the face-to-face requirements in 24 C.F.R. § 203.604; and (2) that the deed of trust incorporated, *as a condition precedent to foreclosure*, required the face-to-face meeting prior to the foreclosure. *Mathews v. PHH Mortgage Corporation*, 283 Va. 723 (2012).

Here, the face-to-face meeting did not take place and Plaintiff seeks relief that the sale is void, or, in the alternative, voidable, as well as an injunction to transfer the property back to Plaintiff. (*See* Am. Compl. ¶ 41). Thus, the analysis is not limited to a determination of the value of the face-to-face interview. Instead, "[i]n actions seeking declaratory *or* injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt*, 432 U.S. at 347 (emphasis added). Moreover, in a lawsuit that "involve[es] claims to real property, the amount in controversy is the value of the property, not simply the amount of damages the plaintiff seeks." *Rehbein*, 937 F. Supp. 2d at 758 (citing *Monton v. Am.'s Servicing Co.*, WL 3596519, at *4, (E.D. Va. Aug. 20, 2012).

Once these elementary distinctions between *Mathews I* and the present case are understood, Defendant's entire motion is unavailing because Defendant admits that the loan balance of the Plaintiff's property exceeded $140,000.00 and that the property sold at the foreclosure sale for $151,016.28. (Def.'s Mem. at 11-12; Exs. 1, 4).[3] Thus, not only does Plaintiff's property exceed the value of $75,000.00, but the balance of her loan also exceeds the jurisdictional requirement. Accordingly, the amount in controversy is met by the "manifest fact that the value of the Property exceeds $75,000." *See e.g.*, *Sherman v. Litton Loan Servicing*, 796 F.Supp.2d 753, 766 (E.D. Va. 2011) (denying plaintiff's motion to remand due to "the manifest fact that the value of the Property exceeds $75,000"); *Monton v. Am.'s Servicing Co.,* No. 2:11cv678, 2012 WL 3596519, at *4, 2012

---

[3] It is important to note the difference between the posture of this case and *Mathews*, which was removed from state court by the defendant. 2010 WL 3766538 at *1. Thus, in *Mathews I*, the defendant was required to show with "competent proof" that the amount in controversy exceeded the jurisdictional amount by a preponderance of the evidence. *Id.* at 4 (quoting *Momin v. Maggiemoo's Int'l, LLC*, 205 F. Supp. 2d 506, 509 (D. Md. 2002). This is a far different standard than the legal certainty test. *See, e.g., Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996); *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993); *Gafford v. General Elec. Co.,* 997 F.2d 150, 158 (6th Cir.1993).

U.S. Dist. LEXIS 117259, at *10 (E.D. Va. Aug. 20, 2012) (Davis, J.) (the fact that the present value of the plaintiffs' real property exceeded $75,000 "by itself, appears sufficient to demonstrate that the amount in controversy is exceeded in this case"); *Rehbein*, 937 F. Supp. 2d at 758-759 ("The uncontested evidence before the court indicates that, as of the date of removal, the amount outstanding on the loan was $316,249.19. Thus, the value of the property and the outstanding balance on [plaintiff's] loan unquestionably exceed $75,000.").

Moreover, as the purchaser of the property at the sale, Defendant stands to lose the outstanding balance of the loan which is fully guaranteed by the FHA under the National Housing Act. *See* 12 U.S.C. §§ 1701-1750jj; *Dixon v. Edwards*, 290 F.3d 699, 711 (4th Cir.2002) ("Under the either party rule … 'if the contract is invalidated, Rev. Edwards loses compensation worth more than $75,000 and the Vestry is deprived of services it has valued at that amount.'"); *Rehbein*, 937 F. Supp. 2d at 759; *Thayer Edsen Winnell v. HSBC Mortgage Servs., Inc.*, 2011 WL 5118805, at *2 (S.D.W. Va. Oct. 28, 2011) ("Thus, foreclosure is HSBC's sole recourse to enforce the loan. If HSBC is unable to enforce the loan, it stands to lose at least the outstanding balance of the loan. The value of the requested injunction, therefore, is the outstanding balance of the loan—$85,359.95.").

The Fourth Circuit's decision in *Dixon* and this Court's decision in *Rehbein*, *Monton* and *Sherman* demonstrate that the amount in controversy satisfies the diversity jurisdiction requirement of $75,000.[4] Accordingly, Defendant's motion should be denied.

---

[4] *See also McGhee v. Citimortgage, Inc.,* 834 F. Supp. 2d 708, 711-712 (E.D. Mich.2011) ("The plaintiff here is attempting to quiet title to a property; the value to him of that relief would be the market value of the property he wishes to possess. Because the property is the object of the litigation, the market value of the foreclosed property is the best measure of the amount in controversy in this case."); *Williams v. JPMorgan Chase Bank, N.A.*, 2012 WL 6150742, at *2 (E.D. Mich. Dec. 11, 2012) ("Because Plaintiff is seeking to set aside the foreclosure sale and retain title and rights to the property, the amount in controversy is the value to Plaintiff of nullifying

### 2. Plaintiff's Request for Injunctive Relief is Appropriate.

Recognizing that the value of the property represents the amount in controversy based on the facts of this case and analogous case law, Defendant also predicates its amount in controversy argument with an additional erroneous argument that Plaintiff and the putative members are not entitled to rescind the foreclosure sale because they were purportedly in arrears. (Def.'s Mem. at 9-10). To that end, Defendant claims when a plaintiff seeks an order from the court voiding the foreclosure and granting plaintiff superior title, "it is akin to a request to quiet title." *Id.* at 10. Defendant attempts to characterize this case as a quiet title action rather than a breach of contract claim because of the Supreme Court of Virginia's holding in *Mathews*, where it held that borrowers "may sue to enforce conditions precedent to foreclosure even if they were the first party to breach the note secured by a deed of trust through non-payment." 283 Va. at 733. This holding dooms Defendant's argument, which is nothing more than the first material breach argument asserted by the mortgage company in *Mathews*. (Def.'s Mem. at 10) ("[the arrearages] render Plaintiff and every purported class member incapable of obtaining any injunctive relief that voids the foreclosure sales at issue and quiets title in their names.").

Of course, this is not an action to quiet title. It is a breach of contract claim and there is no doubt that the complaint satisfies the necessary elements for breach of contract. In particular,

---

the foreclosure sale and regaining possession of the property. . . For this reason, the Court concludes that Defendant met its burden of showing that it is more likely than not that the amount in controversy, the value of the property, exceeds $75,000."); *Johnson v. Wells Fargo Bank, N.A.*, 2013 WL 1196555, at *3 (E.D. Tex. Feb. 22, 2013) ("If Plaintiff is successful in this case and is granted an injunction preventing Defendant from foreclosing on the property, the Court finds that it would place the value of the subject property as the amount in controversy. If Plaintiff prevails, Defendant would be prevented from foreclosing on the property and transferring title to the property to another person. The property at issue in this lawsuit has a current fair market value of $135,489…. Therefore, Defendant has met its burden of establishing that the amount in controversy exceeds $75,000.").

7

Plaintiff alleges that Defendant owed her an obligation to comply with the face-to-face meeting requirement (Am. Compl. ¶¶ 13-16), that defendant violated that obligation by failing to make any effort to conduct the face-to-face meeting (Am. Compl. ¶¶ 17-18), and that the plaintiff suffered injury as a result of the Defendant's breach. (Am. Compl. ¶¶ 22-23). These allegations are sufficient to support a claim for a breach of contract and, in turn, for the requested relief of rescission of the sale.

As the Supreme Court of Virginia made clear: "[w]hether rescission is a proper **remedy** is within the sound discretion of the trial court."[5] *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 519 (2014) (emphasis added) (citing *Bolling v. King Coal Theatres, Inc.,* 185 Va. 991, 996 (1947)). To that end, "where a deed of trust authorizes its trustee to sell the property after the occurrence of a condition precedent, and that condition does not occur, 'the sale may be set aside.'" *Harris v. United States*, 2014 WL 5324941, at *5 (E.D. Va. Oct. 17, 2014) (Morgan, J.) (quoting *Wills v. Chesapeake W. Ry. Co.,* 16 S.E.2d 649, 652 (Va.1941)). Indeed, "[t]he fact that a sale was 'made in violation of the terms of the [deed of] trust … [is] sufficient to justify the court in setting the sale aside." *Harris*, 2014 WL 5324941 at *5 (quoting *Wasserman v. Metzger,* 54 S.E. 893, 895 (Va. 1906)).

In *Harris*, this Court found that the plaintiff "stated a plausible claim for setting aside the foreclosure sale based **on the alleged breach** of the Deed of Trust." *Id*. at 5 (emphasis added). The result in this case should be no different because Defendant failed to satisfy a condition precedent

---

[5] Plaintiff emphasizes the word remedy in this sentence because of Defendant's erroneous assertion that Plaintiff did not pled entitlement to a rescission. (Def.'s Mem. at 10). It appears that Defendant believes that rescission is a separate cause of action. This assertion is incorrect and the Second Amended Complaint adequately seeks to rescind of the sale. (*See* Am. Compl. ¶ 41) ("Moreover, Plaintiff on behalf of herself and the putative class requests that the Court declare the foreclosure sale void or in the alternative voidable, imposing a result trust, or in the alternative, a constructive trust for her benefit so that her home can be deeded back to her.").

to foreclosure and, ultimately, purchased Plaintiff's property at the foreclosure sale. Moreover, if the allegations in the Amended Complaint are true, there is no doubt that the proper remedy is the rescission of the sale because Defendant purchased Ms. Morgan's property at the sale; therefore, the Court need not consider the effect of a rescission on a third party purchaser. *See Squire*, 287 Va. at 530, n. 3 ("As we declined to address whether setting aside a completed foreclosure sale may be ***an appropriate remedy*** in *Bayview* and *Mathews* because the borrowers did not seek it there, we decline to do so in this case because King did not plead sufficient facts.") (emphasis added). Any other result would allow Defendant to benefit from its breach to the detriment of the Plaintiff and the Plaintiff alone. Regardless, the factual allegations sufficiently allege a plausible claim for setting aside the foreclosure sale based on Defendant's breach of the Deed of Trust and the appropriate remedy may be determined at a later point.[6]

### 3. The Value of the Face-to-Face Interview.

Even if the Court finds that the value of this litigation is the face-to-face interview and the face-to-face interview alone, Defendant's motion should still be denied. The stated purpose behind

---

[6] Because the amount in controversy is easily satisfied, Plaintiff will not seriously address Defendant's argument regarding Plaintiff's other alleged damages. Suffice to say, "damages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments ... will be adjudged in the present suit." *Lien v. H.E.R.C. Products, Inc.*, 8 F. Supp. 2d 531, 533 (E.D. Va. 1998) (quoting *Broglie v. MacKay–Smith,* 541 F.2d 453 (4th Cir.1976)). *William B. Tanner Co. v. Cameron Radio, Inc.,* 617 F.2d 169, 173 (8th Cir. 1980) ("Where, however, suit involves total breach of contract, affecting both present and future liability, it is proper to consider the whole value of the contract."). Here, Plaintiff alleges concrete damages that have occurred or damages that will occur in the future, including: (1) moving expenses; (2) future rent; (3) loss of present and future equity in her property; (4) credit damage; and (5) payments she made to the scam foreclosure rescue company. (*See* Am. Compl. ¶ 22). These damages are not purely speculative and can be proven during discovery. Given the thirty-year term of her loan, it cannot be reasonably argued to a "legal certainty" that Ms. Morgan's breach of contract claim is for less than $75,000.00 based on future rent and loss of future equity *alone*.

the face-to-face requirement is to "reduc[e] the incidence of foreclosure" by providing an environment in which the "mortgagee employee can often determine the cause of the default, obtain financial information[,] establish a repayment schedule[,] and prevent foreclosure by influencing the payment habits of mortgagors." *Squire*, 287 Va. at 516-17 (quoting the U.S. Department of Housing and Urban Development, Handbook 4330.1 Rev–5: Administration of Insured Home Mortgages § 7–7(C)(1) (1994)). As noted by this Court, "[t]he face-to-face meeting creates an opportunity for homeowners in default to avoid foreclosure, thus ***surely a plaintiff may be harmed if they are denied this opportunity***, even if they are not able to pay the full debt at the time of the meeting." *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12-CV-617, 2013 WL 350527, at *5 (E.D. Va. Jan. 29, 2013) (Spencer, J.) (emphasis added).

In downplaying the value of the face-to-face interview, Defendant once again relies on the court's statement in *Mathews I* that "[n]othing before the court suggests that a face-to-face meeting with the defendant prior to its having commenced the foreclosure would have 'saved' plaintiffs' home from foreclosure." *Mathews I*, 2010 WL 3766538 at *18-19. However, it appears the court made this statement due to an inadequate record regarding the purpose and requirements of the face-to-face interview. In particular, it does not appear that either party alerted the court to HUD's requirement that the "employee representing the mortgagee at these interviews needs ***to have the authority to propose and accept reasonable repayment plans*** and/or limit their actions to the realm of that authority. The interview has little value if the mortgagee's representative must take proposals back to a superior for a decision." U.S. Department of Housing and Urban Development, Handbook 4330.1 Rev–5: Administration of Insured Home Mortgages § 7–7(C)(3) (1994) (emphasis added) (*available at* https://portal.hud.gov/hudportal/documents/huddoc?id=43301c7HSGH.pdf). Thus, it is not "pure speculation for Plaintiff to contend that the alleged failure to have a face-to-face

meeting had any effect whatsoever on her long term ownership of the Property" as argued by Defendant. (Def.'s Mem. at 15). It is the opposite—a person with authority to propose and accept a reasonable repayment plan was required at the visit, which would have staved off the foreclosure.[7]

### 4. The Class Members' Damages.

For the same reasons that Defendant's amount in controversy argument fails, its request to dismiss the class claim for lack of actual damages also fails. Plaintiff has sufficiently alleged that the class members are entitled to the same injunctive relief as Plaintiff; therefore, to the extent that the value of their foreclosed properties or the balance of their loans exceeded $75,000.00, the Court would have diversity jurisdiction over those claims too. And of course, determining "whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on *its judicial experience and common sense*." Ashcroft v. Iqbal, 556 U.S. 662, 663–64 (2009) (emphasis added).

Judicial experience and common sense support a reasonable inference that the value of each of the foreclosed properties exceeded $75,000.00. At this stage of the litigation, it would be entirely unreasonable to expect Plaintiff to be able to make more of a detailed showing without the

---

[7] Although it is not truly relevant for the purpose of this motion, it is important to note that Defendant's repeated insinuations that Ms. Morgan was severely past due are inaccurate- probably because they never actually spoke to Ms. Morgan about her need for loss mitigation. More importantly, Ms. Morgan was the exact person the face-to-face requirement was designed to protect—she exhausted her retirement to make her mortgage payments when she lost her job and was only two months behind when she obtained new full time employment. Ms. Morgan was in a position to establish a repayment plan that would have quickly resolved any deficiency until she was solicited by an individual who she believed was an employee of her mortgage company to assist with this process. In fact, she was making payments to this company as part of her loan modification and didn't realize her home had been foreclosed until *she* contacted her servicer to arrange for her next payment. (*See* Am. Compl. ¶ 22).

benefit of discovery. Moreover, according to the declaration submitted by Defendant, it has already identified all of the properties that meet the proposed class definition in the Amended Complaint. Accordingly, it will require very little effort during discovery to determine whether a particular homeowner satisfies the diversity requirements.

### 5. The Court Should Defer Considering CAFA Jurisdiction Absent Discovery on the Number of Proposed Class Members.

Finally, Defendant further argues that the Court does not have jurisdiction under the Class Action Fairness Act ("CAFA") because there are purportedly 59 individuals who meet the proposed class definition, *i.e.*, individuals in the Commonwealth of Virginia for whom Lakeview was the beneficiary of their deeds of trust and who experienced a completed foreclosure sale. Plaintiff seriously doubts the veracity of this number based on discovery from Defendant's foreclosure law firm, McCabe Weisberg & Conway, LLC ("McCabe Weisberg"), which indicates that McCabe Weisberg's "records to which it has access show that there are 84 consumers in the boundaries of *the United States District Court for the Eastern District of Virginia* who owned a property that underwent a foreclosure sale… *from June 20, 2012* to the present, and where Lakeview Loan Servicing was the Noteholder and/or beneficiary of a Deed of Trust insured by the [FHA]." (Attached as Ex. 1, at Int. No. 21) (emphasis added).

Given McCabe Weisberg's response, it appears that Defendant's representation to this Court is inaccurate. Moreover, while 84 class members would not confer CAFA jurisdiction, the proposed class definition in this case is significantly larger than that of the McCabe Weisberg case because: (1) it encompasses all of Virginia (as opposed to the Eastern District of Virginia); and (2) the statute of limitations is 3 years longer in this case than the McCabe Weisberg case. Therefore, based on the apparent contradiction between Lakeview and its own foreclosure law firm, the

Plaintiff should be able to proceed with discovery to determine whether the purported class meets the 100 member requirement. *See* 28 U.S.C. § 1332(5)(B).

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. If the Court disagrees, Plaintiff respectfully requests leave to amend her Complaint to conform with the Court's opinion.

Respectfully submitted,

**MICA M. MORGAN**
*on behalf of herself and
all others similarly situated*,

By Counsel

_____/s/_____
Kristi Cahoon Kelly, Esq. (VSB #72791)
Andrew J. Guzzo, Esq. (VSB #82170)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard Anthony Bennett, Esq. (VSB #37523)
Susan Mary Rotkis, Esq. (VSB #40693)
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

James W. Speer, (VSB# 23046)
Virginia Poverty Law Center
919 E. Main Street, Suite 610
Richmond, VA 23219
(804) 782-9430
Fax: (804) 649-0974
Email: jay@vplc.org
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January, 2015, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

John C. Lynch (VSB # 39267)
David M. Gettings (VSB # 80394)
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone No.: (757) 687-7765
Facsimile No.: (757) 687-1504
Email: john.lynch@troutmansanders.com
Email: david.gettings@troutmansanders.com
*Counsel for Defendant Lakeview Loan Servicing*

   /s/_____
Kristi Cahoon Kelly, Esq. (VSB #72791)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
*Counsel for Plaintiff*